UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
C.S., individually and on behalf of her minor child :
M.S.,                                                     :
                                    Plaintiff,            :
                                                          :
                 -against-                                :
                                                          :
NEW YORK CITY DEPARTMENT OF                               :
EDUCATION, et al.,                                        :
                                    Defendants.  :
---------------------------------------------------------- X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____       │
│ DATE FILED: 02/29/2016              │
└─────────────────────────────────────┘
```

15 Civ. 2110 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

Plaintiff C.S., individually and on behalf of her minor child M.S., brings this action

against the New York City Department of Education ("DOE") and Carmen Fariña, in her official

capacity as Chancellor of DOE, pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1400 et seq.  Plaintiff seeks review of the November 21, 2014, decision

of the New York State Review Officer ("SRO Decision") reversing the June 10, 2013, decision

of the Impartial Hearing Officer ("IHO Decision"), which found that the DOE had failed to

provide a free and appropriate education ("FAPE") to M.S. during the 2012-2013 school year.

The parties have cross-moved for summary judgment.  For the reasons below, Defendants'

motion is denied and Plaintiff's motion is granted.

**STATUTORY FRAMEWORK**

The IDEA mandates that states receiving federal special education funding provide

disabled children with a FAPE.  20 U.S.C. § 1412(a)(1)(A); *M.W. ex rel. S.W. v. N.Y.C. Dep't of*

*Educ.*, 725 F.3d 131, 135 (2d Cir. 2013).  "To ensure that qualifying children receive a FAPE, a

school district must create an individualized education program ('IEP') for each such child."

*R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).  An IEP is a written statement

that "'describes the specially designed instruction and services that will enable the child to meet'

stated educational objectives and is reasonably calculated to give educational benefits to the

child." *M.W.*, 725 F.3d at 135 (quoting *R.E.*, 694 F.3d at 175); *see also* 20 U.S.C. § 1414(d).

New York delegates the annual development of an IEP to a local Committee on Special

Education ("CSE").  *See* N.Y. Educ. Law § 4402(1)(b)(1).  At a minimum, a CSE must be

composed of the student's parent(s); a special education teacher; a regular education teacher if

the student participates in a regular education program; a school psychologist; a school district

representative; an individual who can interpret the instructional implications of evaluation

results; a school physician; and a parent of another student with a disability.  *See* Educ. §

4402(1)(b)(1)(a).  "The CSE must examine the student's level of achievement and specific needs

and determine an appropriate educational program."  *R.E.*, 694 F.3d at 175 (citing *Gagliardo v.

Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007)).

If a parent believes that the DOE has failed to provide a FAPE to his or her child, the

parent may "unilaterally place their child in a private school at their own financial risk and seek

tuition reimbursement."  *M.W.*, 725 F.3d at 135 (citing *Florence Cty. Sch. Dist. Four v. Carter*,

510 U.S. 7, 9-10, 16 (1993)).  To seek reimbursement, the parent must file a due process

complaint with the DOE, which triggers administrative proceedings beginning with a hearing

before an Impartial Hearing Officer ("IHO").  *See id.* (citing 20 U.S.C. §§ 1415(b)(6), (f); N.Y.

Educ. Law § 4401(1)).  The IHO hearing is governed by the three-part *Burlington/Carter* test, as

construed by New York Education Law § 4404(l)(c): "(1) the DOE must establish that the

student's IEP actually provided a FAPE; should the DOE fail to meet that burden, the parents are

2

entitled to reimbursement if (2) they establish that their unilateral placement was appropriate and (3) the equities favor them." *M.W.*, 725 F.3d at 135.

An IHO's decision may be appealed to a State Review Officer ("SRO").  *See* Educ. § 4402(2); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 225 (2d Cir. 2012).  The SRO "shall review and may modify . . . any determination of the impartial hearing officer . . . ."  Educ. § 4404(2).  An SRO's decision is the final administrative decision, but an aggrieved party may seek review of the decision by commencing an action in federal district court.  20 U.S.C. § 1415(i)(2)(A); *M.W.*, 725 F.3d at 135-36.

**BACKGROUND**

**I.     M.S.'s Educational History**

Plaintiff C.S.'s child, M.S., has a disability and resides in New York City.  M.S. was born in 1996 and was sixteen years old at the start of the 2012-2013 school year, the year at issue here.  DOE classified M.S. as a student with a "Speech or Language Impairment" for the 2012-2013 school year.  M.S. is eligible to receive a FAPE in accordance with the IDEA and Article 89 of the New York Education Law.  As a student classified with a disability by Defendant DOE, M.S. receives an IEP for each school year that lists, among other things, his management needs and annual goals for the upcoming school year.  The IEP is created based on an annual meeting held prior to the beginning of the school year, though the school placement is selected by a separate committee at a later date.  DOE's recommended placement is stated in the Final Notice of Recommendation ("FNR"), which is mailed to the parent before the start of the school year. The parent has the right to visit the placement before deciding whether or not to accept DOE's recommended placement.  As set forth in Plaintiff's due process complaint, Plaintiff has rejected DOE's recommended placements as inappropriate each year since the 2006-2007 school year.

Plaintiff instead has placed M.S. at Cooke, a private, non-state approved school.  For the 2006-2007 school year, Plaintiff filed a due process complaint seeking to require DOE to pay the cost of tuition at Cooke for that year.  Pursuant to that resolution and subsequent settlement agreements with Plaintiff, DOE agreed to pay for M.S.'s tuition at Cooke for that year and the subsequent five school years, with the last being the 2011-2012 school year.  M.S. continued to attend Cooke schools, including the 2012-2013 school year.

## II.    M.S.'s Individualized Education Program for 2012-2013

On March 2, 2012, the Committee on Special Education ("CSE") met to develop an IEP for M.S. for the 2012-2013 school year.  The CSE team consisted of a related service provider/special education teacher from DOE, a district representative/school psychologist, two teachers from Cooke and Plaintiff.  Neither Plaintiff nor any other CSE team member requested that an additional parent member attend the meeting.

M.S.'s 2012-2013 IEP states that he received a speech and language evaluation in February 2010, and his scores fell severely below the average range of performance.  The IEP also states that M.S. was at a third-grade independent reading level, fourth-grade instructional reading level, a third-grade math level, and was working on addition, subtraction and multiplication of fractions.  With respect to behavioral analysis, the IEP states that M.S. does not display any behavioral problems and is a conscientious student.  M.S.'s IEP indicates that the team found him eager to and capable of making academic progress.

M.S.'s IEP made several recommendations to help M.S. achieve his academic and social goals, including placement in a specialized 12:1:1 program (a class with twelve students, one special education teacher and one additional adult or paraprofessional), related individual services including speech-language therapy twice a week and counseling services once a week at

4

a provider's location, placement in a twelve-month school year program, social language training and social engagement strategies, increasing socialization and a number of techniques to address his management needs.  No placement decision was made at the March 2, 2012, IEP meeting. The parties agree that the IEP as written could have provided M.S. with a FAPE in an appropriate setting.

## III.   Rejection of the Recommended School Placement

Plaintiff received a FNR from DOE, dated June 22, 2012, recommending that M.S. be placed at P079M, the Horan School ("Horan").  DOE had previously recommended that M.S. be placed at Horan for the 2010-2011 school year, two years earlier, but Plaintiff visited the school, rejected it as inappropriate for M.S. and unilaterally placed M.S. at Cooke.  Through counsel, Plaintiff notified the CSE by letter dated June 29, 2012, that she needed to visit the school before deciding whether to place M.S. at Horan and that Plaintiff would maintain M.S.'s placement at Cooke pending her determination of Horan's appropriateness.

Plaintiff toured Horan on or about July 17, 2012.  The tour was led by Ms. Ortega, a parent coordinator at Horan, and Plaintiff was accompanied by a Cooke administrator, Dr. Francis Tabone.  According to their testimony at the hearing before the IHO, both Plaintiff C.S. and Dr. Tabone observed that the recommended program appeared to be geared towards students who were lower functioning than M.S.  Plaintiff was advised that Horan emphasized vocational, versus academic, activity.  Following the visit to Horan, Plaintiff, through counsel, wrote a letter to DOE dated July 18, 2012, setting forth her rejection of Horan and requesting an alternative, more appropriate public school placement for M.S.  Plaintiff noted that unless and until DOE provided an appropriate public school placement, Plaintiff would have no choice but to keep M.S. enrolled at Cooke.  DOE did not offer an alternative placement for the 2012-2013 school

year.  On August 20, 2012, Plaintiff, through counsel, sent a letter to DOE advising that she had not received an alternative placement and giving notice that she therefore would be keeping M.S. at Cooke and would seek prospective payment of the tuition expenses for the 12-month 2012-2013 school year from DOE.  Plaintiff apparently received no response or offer of an alternate placement from DOE.

M.S. remained at Cooke for the duration of the 2012-2013 school year.  At Cooke, M.S. received only two weekly sessions of speech and language therapy even though the IEP had recommended two individual weekly sessions of speech and language therapy.

### A.    Due Process Complaint and IHO Proceedings

On or about December 4, 2012, Plaintiff, through counsel sought prospective tuition payment for the 2012-2013 school year in the form of a due process complaint requesting an impartial hearing.

The matter was assigned to IHO Israel Warhman, who convened an impartial hearing over five nonconsecutive days that concluded on April 26, 2013.

At the hearing, DOE presented two witnesses: Ms. Ortega, the Horan parent coordinator, and Ms. Lucio, the school district psychologist who had served on the IEP team that developed M.S.'s IEP for the 2012-2013 school year.  Ms. Ortega testified that she had explained to Plaintiff, when she visited Horan in July 2012, what programs were available, including Horan's pre-vocational program.  Ms. Ortega testified that Plaintiff was never told what program M.S. would be placed in had he attended the school.

Ms. Lucio testified about M.S.'s functioning levels at the time of the IEP review and the CSE's recommendations.  She testified that the recommended 12:1:1 program would be appropriate for M.S. because it balanced academics and vocational skill development.  Ms. Lucio

did not provide information about Horan and testified that she had heard of Horan, but was not familiar with it.

Plaintiff presented three witnesses at the hearing: Dr. Tabone, a Cook administrator; Mary Clancy, the Cook assistant head of school; and Plaintiff herself.  Dr. Tabone testified that his impression, based upon the tour with Plaintiff as well as a previous visit to Horan, was that the recommended program was "clearly a classroom for students who had very low adaptive skills and who might have been classified as [mentally retarded] or [having intellectual disability]."  Dr. Tabone also testified that, based on his visit to Horan, the recommended school and program would not be appropriate for M.S. because the students there are not at M.S.'s adaptive or social-emotional level.  Dr. Tabone testified that M.S. was a student making academic progress.  In contrast, the recommended program at Horan, based on his visits and observations, was for "students . . . who [in Horan's words] have peaked in terms of their academic progress."

Ms. Clancy testified that she believed that if M.S. were placed in a school with lower-functioning individuals, he would shut down.  She also testified that M.S. was progressing academically, and had made progress in reading comprehension, vocabulary development and math computation.

Plaintiff testified that she did not believe the program she observed at Horan would stimulate M.S., and she believed that M.S. would regress in such a setting.  Plaintiff further testified that, with a family income of $45,000 per year, and school costs at Cooke of $50,000 per year, she could not afford to pay the tuition at Cooke.

DOE and Plaintiff each offered fifteen exhibits into evidence, and the IHO entered four additional exhibits.  Among the exhibits that the IHO entered into evidence, over DOE's

objection, was a printout from DOE's website of a description of programs offered at Horan, including a 12:1:1 program.  The IHO quoted the contents of the website in the Amended Findings of Fact and Final Decision, dated May 31, 2013, and amended June 10, 2013.

The IHO Decision, applying the three prongs of the *Burlington/Carter* test for tuition reimbursement, found that: (1) DOE failed to meet its burden of proving that it provided M.S. a FAPE for the 2012-2013 school year; (2) Cooke was an appropriate placement for M.S.; and (3) a balancing of the equities favored tuition reimbursement.

With respect to the first prong, the IHO noted that an expert witness "testified credibly, and this was supported by the parent's observation, that the program and school offered is a program and school for lower functioning individuals, lower than M.S."  The IHO found that placing M.S. at Horan "might very well cause regression, as was argued by the witnesses who know M.S."  In explaining his finding that DOE had not met its burden under prong 1, the IHO relied on the description of the Horan "program offered, as seen in the [DOE] placement site in its entirety," which stated that the 12:1:1 classes at Horan were for students who "demonstrate severe emotional/behavioral disturbance, function in the retarded range and require special education services in a specialized school environment . . . ."  The IHO held that the language on DOE's website "supports the view of the program and site by the parent's expert witness and the parent."

With respect to the second prong, the IHO found that Cooke was an appropriate placement because M.S. was "in small classes, given highly individualized instruction and is doing an internship which seems geared to his growth."

With respect to the third prong, the IHO found that the balance of equities favored reimbursement of Plaintiff.  The IHO ordered that DOE fund the tuition of M.S. at Cooke for the 2012-2013 school year.

**B.      SRO Appeal and Determination**

On appeal, by decision dated November 21, 2014, the SRO reversed the IHO and found that the DOE was not required to fund M.S.'s placement in a 12-month school year program at Cooke.  The SRO observed that the parties did not agree to modify M.S.'s then current placement of a 10-month program, and there had been "no administrative or judicial decision vindicating the parent's position that a 12-month school year program at Cooke was appropriate to meet the student's needs."  With respect to the IEP, the SRO found that the 12:1:1 special class placement was "consistent with the student's needs as identified in the present levels of performance in the March 2012 IEP."

As to the first *Burlington/Carter* prong, the SRO found that "the IHO erred in determining that the district failed to offer the student a FAPE for the 2012-2013 school year because the assigned public school site was not appropriate." The SRO explained that Plaintiff could not prevail under the first prong because her claims "turn on how the March 2012 IEP would or would not have been implemented and as it is undisputed that the student did not attend the district's assigned public school site, the parent cannot prevail on such speculative claims." The SRO did not address the second or third prong because the DOE had sustained its burden of proving it had provided a FAPE to M.S. under the first prong.  The SRO also stated that the IHO's additional investigation into the assigned school site and entering the printout from the DOE website into evidence into the record was not authorized by State regulations.

Plaintiff timely commenced this action on March 20, 2015.

**STANDARD**

A motion for summary judgment in the IDEA context is "in substance an appeal from an administrative determination, not a summary judgment [motion]."  *M.H.*, 685 F.3d at 226; *accord M.W.*, 725 F.3d at 138 ("Summary judgment in the IDEA context . . . is only a pragmatic procedural mechanism for reviewing administrative decisions." (internal quotation marks omitted) (quoting *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam)).

In reviewing an SRO's decision, a district court determines whether the SRO's decision is supported by "the preponderance of the evidence, taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties."  *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003) (internal quotations omitted).  "When an IHO and the SRO reach conflicting conclusions, [a court generally] defer[s] to . . . the SRO's decision."  *R.E.*, 694 F.3d at 189 (internal quotation marks and brackets omitted).  However, the "factual findings must be 'reasoned and supported by the record' to warrant deference,"  *M.H.*, 685 F.3d at 241 (quoting *Gagliardo*, 489 F.3d at 114), and, if an SRO's decision is not reasoned and supported by the record, "a better-reasoned IHO opinion may be considered instead."  *R.E.*, 694 F.3d at 189; s*ee also Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218-19 (2d Cir. 2014).  If an SRO decision does not reach a particular issue, but an IHO opinion does address that issue and is well reasoned and based on the record, the IHO opinion should be accorded deference.  *See M.H.*, 685 F.3d at 252, 254 (affirming on appeal the district court's decision to defer to the IHO's conclusion that the school was an appropriate unilateral placement for the first plaintiff, and that the equitable considerations favored the first plaintiff, when the SRO did not reach those questions).

A district court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *T.P.*, 554 F.3d at 252 (alterations in original) (internal quotation marks omitted). Accordingly, a federal court may not "substitute [its] own notions of sound educational policy for those of the school authorities." *M.W.*, 725 F.3d at 139 (internal quotation marks omitted). However, conclusions of law are not accorded this deference and are reviewed de novo. *Mrs. B. v. Milford Bd. Of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997) ("Consequently, the 'due weight' we ordinarily must give to the state administrative proceedings is not implicated with respect to that conclusion, because it concerns an issue of law; namely, the proper interpretation of the federal statute and its requirements.").

In deciding how much deference to accord the IHO and SRO, a reviewing court may take into account "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E.*, 694 F.3d at 189 (internal quotation marks omitted). "The deference owed depends on both the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014).

**DISCUSSION**

Plaintiff is entitled to reimbursement of tuition they paid for the 2011-2012 academic year because, applying the *Burlington/Carter* test, the preponderance of the evidence (i) does not support the SRO's decision that the district provided a FAPE when it recommended placing M.S. at Horan; and does support the IHO's findings that (ii) Plaintiff's placement of M.S. at Cooke was appropriate and (iii) the equities favor them.

I.     **Plaintiff's Challenge to Horan Was Not Improperly Speculative as a Matter of Law**

Although her initial due process complaint challenged both M.S.'s IEP and the recommended placement at Horan, on the instant motion, Plaintiff challenges only the SRO's determination that Horan was an appropriate placement for M.S. -- specifically, the SRO's conclusion that Plaintiff's objection to Horan was too speculative as M.S. never attended Horan and her objection as to how M.S.'s IEP would have been implemented was hypothetical. Because this holding is contrary to recent Second Circuit law, the SRO Decision is reversed.

In *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015), the Second Circuit clarified *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012), with regard to challenging a recommended placement's capacity to implement effectively an IEP rather than challenging the recommendations of the IEP. *M.O.*, 793 F.3d at 244. *R.E.*, in that respect, "stands for the unremarkable proposition that challenges to a school district's proposed placement school must be evaluated prospectively (i.e., at 'the time of the parents' placement decision') and cannot be based on mere speculation." *M.O.*, 793 F.3d at 244. The Second Circuit has stated that "[w]hile it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *Id.* (internal citation omitted). Contrary to the SRO Decision, "*R.E.* does not foreclose all prospective challenges to a proposed placement school's capacity to implement a child's IEP." *Id.* "To conclude otherwise would require parents to send their child to a facially deficient placement school prior to challenging that school's capacity to implement their child's IEP, which is antithetical to the IDEA's reimbursement process." *Id.* at 244-45 (internal alteration and quotation marks omitted).

The SRO Decision, which was issued prior to the Second Circuit's clarification of the law in *M.O.*, foreclosed Plaintiff's challenge to the recommended placement at Horan solely because M.S. had not attended Horan, and therefore the challenge was speculative.  The SRO did not address, as it should have, the factual question of whether Horan had the capacity to implement M.S.'s IEP.

## II.     The Better-Reasoned IHO Decision Is Accorded Deference

The SRO Decision did not reach the issue of whether Horan had the capacity to implement the IEP, or the ensuing issues of whether Cooke was an appropriate unilateral placement or whether equitable considerations weigh in favor of the parent's request for relief. The IHO opinion did address these issues and is well-reasoned and based on the record.  The IHO opinion therefore should be accorded deference.  *See M.H.*, 685 F.3d at 252-54 (2d Cir. 2012).  Plaintiff's motion for summary judgment is granted.

### A.  Prong 1: DOE Failed To Provide M.S. with a FAPE

According due weight to the IHO's factual findings regarding the programs offered by Horan and the environment in which M.S. would be educated, the IHO Decision reasonably concluded that DOE did not satisfy its burden of demonstrating the appropriateness of the offered placement, and showing that Horan was implementing M.S.'s IEP.

Based on the testimony offered at the hearing, the IHO made the following factual findings:  that the school, Horan, "seems to be one for students who have peaked academically, so that the emphasis is on careers"; and that M.S. "is higher functioning than the types of students Horan appears to focus upon"; and that "MS is continuing to progress in his skills in reading and math."  The IHO based these findings on documents in evidence showing M.S.'s progress in reading and math; the credible testimony of Plaintiff's witness Mr. Tabone about the

nature of the program at Horan; the credible testimony of the school district's witness, "supported by the parent's observation, that the program and school [are] for lower functioning individuals, lower than MS" and "that placing MS there might very well cause regression." Based on this evidence, the IHO "was not convinced" that the DOE had satisfied its burden of proof with respect to Count I and "would rule that Prong I was not satisfied." The IHO confirmed his findings by taking judicial notice of the DOE's description on its website of the Horan program offered to M.S. -- that the program is for those who "demonstrate severe emotional/behavioral disturbance, function in the retarded range." The IHO's factual findings should be accorded deference.

Defendants object to the IHO's reliance on the DOE website, which they say is not authorized under state regulations because the IHO himself, rather than one of the parties, offered it into evidence. Defendants' argument is rejected without reaching its substance, because the IHO made clear that the website merely confirmed, and was not essential to, his holding.

Defendants contend that the IHO improperly placed on the DOE the burden of showing the adequacy of its proposed placement, arguing that the burden of proof should be Plaintiff's because Plaintiff's challenge is in reality a challenge to the IEP and not to the DOE's placement. Defendants are incorrect that Plaintiff's challenge to the recommended placement at Horan is a pretext. The parties agree in the Joint Statement of Facts that "[t]he IEP, as written, could have provided M.S. with a FAPE in an appropriate setting." Plaintiff clearly has abandoned her challenge to M.S.'s IEP at this stage and moreover relies on the IEP as the basis of her challenge to the proposed placement at Horan. Because Plaintiff's challenge is to the adequacy of the proposed placement and not, as Defendants contend, the IEP, the IHO properly recognized that

DOE had the burden of showing the adequacy of its proposed placement.  *See M.O.*, 793 F.3d at 245 (holding that the school district did not have the burden to produce evidence of proposed placement's adequacy where arguments that placement was inappropriate were attacks on IEP, not placement's ability to implement IEP); *W.W. & D.C. v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 9495, 2016 WL 502025, at *5 (S.D.N.Y. Feb. 8, 2016) ("*M.O.* clarifies that parents may prospectively challenge the recommended placement school's capacity to implement their child's IEP and strongly suggests that the burden is on the school district.").

Deferring to the IHO's factual finding regarding the credibility of the evidence, the IHO reasonably concluded that the first prong of *Burlington/Carter* was satisfied and the district did not provide a FAPE to M.S.

### B.  Prong 2: Cooke Was an Appropriate Placement for M.S.

The second prong of the *Burlington/Carter* test requires a plaintiff to show that her unilateral placement was "reasonably calculated to enable the child to receive educational benefits," such that it is "likely to produce progress, not regression."  *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364-65 (2d Cir. 2006) (internal quotation marks omitted).  The IHO concluded that Plaintiff had satisfied prong 2, finding that Cooke provided M.S. with "small classes, [] highly individualized instruction and . . . an internship which seems geared to his growth." Although Cooke placed M.S. in group speech and language therapy rather than in individual therapy as the IEP recommended, the IHO legitimately concluded, in light of the preponderance of the evidence, that the placement at Cooke was reasonably calculated to benefit M.S. and would meet the Second Circuit's standard for a private placement: that it is "likely to produce progress, not regression."  *Gagliardo*, 489 F.3d at 112 (quoting *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998)).  "To qualify for reimbursement under the IDEA,

parents need not show that a private placement furnishes every special service necessary to maximize their child's potential." *Frank G.*, 459 F.3d at 365.  Deferring to the IHO's factual conclusions, Plaintiff has shown that Cooke's program was reasonably calculated to enable M.S. to receive educational benefits.

###    C.  Prong 3: The Balance of the Equities Favors Reimbursement

Defendants do not contest Prong 3, that the balance of equities favors reimbursement, and the SRO did not address it.  The IHO's decision that the balance of equities favored reimbursement was reasoned and supported by the record, which showed that tuition costs at Cooke exceeded Plaintiff's household income.  The IHO Decision is therefore accorded deference on this issue as well.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED, and Defendants' cross-motion for summary judgment is DENIED.  The Clerk is directed to close the motions at Docket Nos. 12 and 17 and to close the case.

Dated: February 29, 2016
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**